1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ALEX BAILEY,                              No.  2:13-cv-2281-EFB

12                 Plaintiff,

13         v.                                   ORDER

14    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,
15
                      Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

20   XVI of the Social Security Act.  The parties' cross-motions for summary judgment are pending.

21   For the reasons that follow, plaintiff's motion is granted, defendant's motion is denied, and the

22   matter is remanded for further consideration.

23   I.     BACKGROUND

24          Plaintiff filed an application for SSI on August 20, 2010, alleging that he had been

25   disabled since November 6, 1999.  Administrative Record ("AR") 136-154.  His application was

26   denied initially and upon reconsideration.  *Id.* at 59-63, 65-71.  On August 7, 2012, a hearing was

27   held before administrative law judge ("ALJ") Daniel G. Heely.  *Id.* at 31-54.  Plaintiff was

28   represented by counsel at the hearing, at which he and a vocational expert ("VE") testified.  *Id.*

                                                    1

On September 12, 2012, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1]  *Id.* at 10-19.  The ALJ made the following specific findings:

1.  The claimant has not engaged in substantial gainful activity since August 20, 2010, the application date (20 CFR 416. 971 *et seq*.).

2.  The claimant has the following severe impairments: status post valve replacement; obesity; and depression (20 CFR 416.920(c)).

        * * *

/////

/////

_____

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 CFR 416.967(b).  He can sit, stand, and/or walk 6 hours in an 8-hour work day with regular breaks.  He can lift and/or carry 20 pounds occasionally and 10 pounds.  He can occasionally climb ramps or stairs but must never climb ladders, ropes, or scaffolds.  He can occasionally balance, stoop, kneel, crouch, or crawl.  He must avoid concentrated exposure to extreme cold, heat, excessive vibrations or work around hazards (dangerous machinery and unprotected heights).  He has simple English reading and writing abilities, nothing complex, technical or scientific and he limited to simple, routine tasks with only occasional public contact.

\* \* \*

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

\* \* \*

6.  The claimant was born on November 5, 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 20, 2010, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 12-18.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id*. at 5-6, and on October 16, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-4.

II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    ANALYSIS

Plaintiff argues that the ALJ erred in (1) failing to adequately address the opinions of his treating physicians; (2) finding that he does not meet listing 12.06; and (3) relying on VE testimony that did not accurately reflect his RFC.  ECF No. 18-1 at 26-40.

A.  Whether the ALJ Properly Weighed the Medical Opinion Evidence of Record

Plaintiff argues that the ALJ improperly evaluated the opinions of his treating doctors. ECF No. 18-1 at 26-36.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834.  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

4

1   1996).  In determining whether an ALJ properly rejected a medical opinion, in addition to

2   considering its source, the court considers whether (1) contradictory opinions are in the record;

3   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

4   treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81

5   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional

6   may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.

7   *Id*. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is

8   contradicted by a supported examining professional's opinion (e.g., supported by different

9   independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

10  1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

11  However, "[w]hen an examining physician relies on the same clinical findings as a treating

12  physician, but differs only in his or her conclusions, the conclusions of the examining physician

13  are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

14          1. Physical Impairments

15          Plaintiff first argues that the ALJ erred by rejecting the opinion of his treating physician

16  Dr. Hans Laursen in favor of the opinions given by a non-examining physician.  ECF No. 18-1 at

17  28-32.  Dr. Laursen completed a Medical Source Statement-Physical form on May 25, 2010.  AR

18  at 269-270.  It was his opinion that plaintiff could occasionally lift less than 10 pounds; stand

19  and/or walk for less than 2 hours in an 8-hour workday; sit for 6-hour in an 8-hour workday; and

20  occasionally balance, kneel, crouch, and crawl, but never stoop or climb.  *Id*.  Dr. Laursen stated

21  that plaintiff's prognosis was stable, and that his opinion was based on "UCSD-La Jolla

22  surgical/rehab records."  *Id*. at 270

23          The record also contains a Physical RFC Assessment completed by non-examining

24  physician Dr. Thu N. Do.  *Id*. at 401-405.  Dr. Do reviewed plaintiff's records and diagnosed him

25  with status post metallic mitral valve replacement.  *Id*. at 401.  Dr. Do opined that plaintiff could

26  lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-

27  hour workday; sit 6 hours in an 8-hour workday; push and pull without limitations; occasionally

28  climb ramps and stairs, but never ladders, ropes, or scaffolds; and occasionally balance, stoop,

1  kneel, crouch, and crawl. *Id*. at 402-403.  He further opined that plaintiff should avoid

2  concentrated exposure to extreme cold and heat, vibrations, and hazards (machinery, heights,

3  etc.). *Id*. at 404.

4      In assessing plaintiff's RFC, the ALJ gave significant weight to Dr. Do's opinion, while

5  according "less weight" to Dr. Laursen's opinion.  Because Dr. Laursen's treating opinion was

6  contradicted by Dr. Do's opinion, the applicable standard is whether the ALJ provided "specific

7  and legitimate" reasons for rejecting his opinion.[2] *See Orn*, 495 F.3d at 632.  The ALJ explained

8  that he gave reduced weight to Dr. Laursen's opinion because "his opinion relies heavily on

9  subjective report of symptoms and limitations provided by the claimant, and the totality of the

10  evidence does not support the opinion."  AR 15.

11      A treating or examining physician's opinion may be rejected where it is premised

12  primarily on plaintiff's subjective complaints and the ALJ properly discounted plaintiff's

13  credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ, however,

14  provides no explanation for his conclusion that Dr. Laursen's opinion relied heavily on plaintiff's

15  subjective complaints without objective support and does not cite to any evidence in the record

16  supporting this conclusion.  Further, a review of the statement provided by Dr. Laursen does not

17  indicate that he relied heavily on plaintiff's subjective complaints.  Indeed, he stated that his

18  opinion was based on the "UCSD-La Jolla surgical/rehab records."  AR 270.  Thus, the ALJ's

19  finding that Dr. Laursen's opinion relied heavily on plaintiff's subjective complaints is not

20  supported by the record.

21      In the same vein, the ALJ concluded, without explanation, that Dr. Laursen's opinion is

22  not supported by the "totality of the evidence."  This conclusory statement falls short of satisfying

23  the specific and legitimate standard.  An ALJ may satisfy his burden of providing specific and

24                  ——————————————

25      [2]  In his opinion the ALJ stated that plaintiff "was examined on only one occasion by Hans Laursen, D.O."  AR 15.  Plaintiff argues that the ALJ failed to properly consider that Dr. Laursen

26  is part of a team of physicians treating plaintiff, ECF No. 18-1, while the Commissioner contends that the ALJ properly found that he was only an examining physician, ECF No. 21 at 4.  The

27  dispute is inconsequential as the ALJ was required to give specific and legitimate reasons for rejecting Dr. Laursen's opinion, regardless of whether he is characterized as a treating or

28  examining source. *See Lester*, 81 F.3d at 830-831.

1   legitimate reasons for rejecting a contradicted medical opinion "by setting out a detailed and

2   thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

3   and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (1988).  As explained by the Ninth

4   Circuit:

5           To say that medical opinions are not supported by sufficient
            objective findings does not achieve the level of specificity our prior
6           cases have required even when the objective factors are listed
            seriatim. The ALJ must do more than offer his own conclusions. He
7           must set forth his own interpretation and explain why he, rather
            than the doctors, are correct.

8

9   *Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir.1999).

10          Here, the ALJ offered only his conclusion that Dr. Laursen's opinion was inconsistent

11  with the record as a whole, and fails to specifically identify any portions of the record that are

12  inconsistent with his opinion and explain why.  Such conclusory dismissal of Dr. Laursen's

13  opinion does not constitute a specific and legitimate reasons for rejecting it.

14          The Commissioner argues that objective medical evidence does not support Dr. Laursen's

15  opinion and therefore the ALJ properly concluded that Dr. Laursen relied heavily on plaintiff's

16  subjective complaints.  ECF No. 21 at 5-6.  Specifically, the Commissioner contends that Dr.

17  Laursen's opinion is not supported by a CT scan in 2009 that showed no acute osseous

18  abnormalities and no acute cardiopulmonary disease; a 2010 cardiological physical exam that

19  found no abnormalities; a treatment note indicating no evidence of heart failure or ischemia by

20  exam/history/objective data; and emergency room records that found plaintiff "was well-

21  developed and well-nourished, with normal range of motion and no tenderness in his

22  musculoskeletal system. *Id*.; *see* AR 266, 311, 336, 492.  With the exception of the emergency

23  room records, the ALJ's opinion does not address any of the evidence cited by the Commissioner.

24  Indeed, the 2012 emergency room records were the only medical records pertaining to plaintiff's

25  physical impairments that the ALJ discussed in his decision.  *See* AR 15.  The ALJ did not

26  discuss any of the specific records Dr. Laursen relied upon in formulating his opinion.

27  Furthermore, the emergency room records concern medical treatment plaintiff received due to

28  head trauma.  Plaintiff alleges disability due to his heart condition, not head trauma.  *See* AR 36.

1   Thus, even had the ALJ relied on the emergency room records in rejecting Dr. Laursen's opinion,

2   reliance on those records alone would not satisfy the applicable standard.

3       As the ALJ did not rely on any of the evidenced cited by the Commissioner in rejecting

4   Dr. Lauren's opinion, such evidence is not a proper basis for upholding the ALJ's decision.  *See*

5   *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) ("Because the

6   grounds upon which an administrative order must be judged are those upon which the record

7   discloses that its action was based, the agency must explain its reasoning.") (quotations and

8   citations omitted); *Stout v. Commissioner*, 454 F.3d 1050, 1054 (9th Cir. 2006) (finding that the

9   reviewing court "cannot rely on independent findings" and is "constrained to review the reasons

10  the ALJ asserts.").  Accordingly, the ALJ failed to give legally sufficient reasons for rejecting Dr.

11  Lauren's opinion.

12          2. <u>Mental Impairments</u>

13      Plaintiff next argues that the ALJ erred in rejecting opinions from medical sources relating

14  to his mental impairments.

15      On January 23, 2009, plaintiff underwent a comprehensive psychiatric evaluation

16  conducted by Dr. Gregory Nicholson, M.D.  AR 246-251.  Dr. Nicholson diagnosed plaintiff with

17  psychotic disorder, not otherwise specified; major depressive disorder; and alcohol and

18  polysubstance dependence, in remission.  *Id*. at 250.  He opined that plaintiff could understand,

19  remember, and carry out simple one or two-step job instructions, as well as detailed and complex

20  instructions.  *Id*. at 251.  He also opined that plaintiff was mildly impaired in interacting with co-

21  workers and the public; concentration and attention, persistence and pace; and performing work

22  activities without special supervision.  *Id*.  It was also his opinion that plaintiff was moderately

23  impaired in his ability to maintain regular attendance in the work place and perform work

24  activities on a consistent basis.  *Id*.

25      More than two years later plaintiff underwent another comprehensive psychiatric

26  evaluation, which was performed by Dr. Steven Terrini, Ph.D.  *Id*. at 468-471.  Dr. Terrini

27  diagnosed plaintiff with schizophrenia, paranoid type with depressive features; polysubstance

28  dependence; and antisocial personality disorder.  *Id*. at 470-471.  He opined that plaintiff may be

1   able to perform simple and repetitive tasks, but would likely be impaired in his ability to perform

2   detailed and complex tasks.  *Id*. at 471.  It was also his opinion that plaintiff would have problems

3   with supervisors and interacting with coworkers and the public, and with performing work

4   activities on a consistent basis without special instructions.  He further opined that plaintiff was

5   moderately to severely impaired in maintaining regular attendance in the workplace; in dealing

6   with the stress encountered in a competitive workplace; and in completing a normal workday or

7   workweek without interruption.  *Id*.

8       The record also includes a Mental RFC Assessment completed by non-examining

9   physician Dr. K. Loomis, M.D.  *Id* at 483-485.  Dr. Loomis opined that plaintiff had moderate

10  limitations in understanding, remembering, and carrying out detailed instruction, as well as in his

11  ability to interact appropriately with the public.  *Id*. at 483-485.  He also opined that plaintiff

12  could perform simple one to two step tasks; maintain concentration, persistence and pace

13  throughout a normal workday/workweek as related to simple/unskilled tasks; interact

14  appropriately with coworkers and supervisors; and make adjustments and avoid hazards in the

15  workplace.  *Id*. at 485.

16      In assessing plaintiff's RFC, the ALJ gave significant weight to Dr. Loomis, while giving

17  "less weight" to Dr. Nicholson's opinion because "[h]e did not have a longitudinal treatment

18  history with the claimant and was therefore unable to document the subsequent deterioration of

19  the claimant with regard to concentration, persistence and pace."  *Id*. at 16  The ALJ also stated

20  that "Dr. Terrini is given more weight than Dr. Nicholson, as his opinion is consistent with the

21  RFC reached in this decision and the subsequent record and history as a whole."  *Id*. at 17.

22      Plaintiff argues that the ALJ's RFC determination that plaintiff is limited to simple,

23  routine tasks with only occasional public contact is contrary to the medical opinions on which the

24  ALJ relied.  ECF No. 18-1 at 32.  Plaintiff specifically notes that Dr. Terrini opined that plaintiff

25  was moderately to severely impaired in maintaining regular attendance in the workplace and in

26  competing a normal workday or workweek without interruption from his psychiatric condition.

27  Plaintiff contends that had these limitations been included in the RFC, a finding of disabled

28  would have been appropriate.

9

1   The Commissioner focuses on Dr. Terrini's "opin[ion] that Plaintiff would 'likely have

2   problems' performing work activities on a consistent basis, maintaining regular attendance, and

3   interacting with coworkers and the public."  ECF No. 21 at 7.  The Commissioner argues that the

4   ALJ interpreted Dr. Terrini's use of the words "some problems" to mean that plaintiff would not

5   be precluded from all activity, and therefore "the ALJ properly translated Dr. Terrini's opinion

6   into a functional capacity statement, reasonably concluding here that Plaintiff was limited to

7   simple, routine tasks with no more than occasional public contact."  *Id*.  The argument

8   mischaracterizes Dr. Terrini's opinion, as well as the ALJ's own findings.

9   As noted above, Dr. Terrini's opinion was specific that plaintiff was moderately to

10   severely impaired in maintaining regular attendance in the workplace; in dealing with the stress

11   encountered in a competitive workplace; and in completing a normal workday or workweek

12   without interruption.  *Id*.  Further, the ALJ's decision did not discuss Dr. Terrini's opinion that

13   plaintiff had moderate to severe impairments.  Instead, the ALJ's decision ignored these opinions,

14   and only focused on the portions of Dr. Terrini's opinion that supported the ALJ's RFC

15   assessment.  Accordingly, the ALJ rejected Dr. Terrini's opinion that plaintiff had moderate to

16   severe limitations in maintaining regular attendance, dealing with stress, and completing a normal

17   workday without providing a supporting rationale for doing so.[3]

18   Thus, the ALJ failed to adequately consider all the medical evidence of record, including

19   the medical opinion evidence.  Accordingly, the court finds that this matter must be remanded for

20   further consideration.

21   IV.   <u>CONCLUSION</u>

22   Accordingly, it is hereby ORDERED that:

23   1.  Plaintiff's motion for summary judgment is granted;

24   2.  The Commissioner's cross-motion for summary judgment is denied;

25   3.  The matter is remanded for further consideration consistent with this order; and

26   /////

27

28   _____
       [3]  Because the court finds that remand is necessary for further consideration of the medical
     evidence, the court declines to address plaintiff's additional arguments.

10

1          4.  The Clerk is directed to enter judgment in plaintiff's favor.

2   DATED:  March 30, 2015.

3

4                                    EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28